UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENO A LOCASCIO, | Civil Action No. 16-566 (SDW) |
| Plaintiff, | |
| v. | OPINION |
| SHARON LONGINETTI, et al., | |
| Defendants. | |

**WIGENTON**, District Judge:

Currently before this Court is the complaint of Plaintiff, Geno A. Locascio. (ECF No. 1). As this Court has previously granted Plaintiff *in forma pauperis* status, this Court is required to screen the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Pursuant to these statutes, this Court must dismiss Plaintiff's claims if they are frivolous, malicious, fail to state a claim for relief, or seek damages from a defendant who is immune. For the reasons set forth below, this Court will dismiss Plaintiff's claims against the New Jersey State Parole Board with prejudice; dismiss Plaintiff's money damages claims against Defendants Longinetti, Tischio, and Carlini in their official capacities only with prejudice; dismiss all of Plaintiff's claims against Defendants Ward, Plousis, George, Robertson, and Morenco without prejudice; and permit Plaintiff's remaining claims against Defendants Longinetti, Tischio, and Carlini to proceed at this time. This Court will also deny Plaintiff's request for pro bono counsel without prejudice.

**I. BACKGROUND**

Plaintiff, Geno A. Locascio, is a convicted state prisoner currently incarcerated at Northern State Prison in Newark, NJ. (*See* ECF No. 1, 7). Plaintiff's claims arise out of events

1

related to his release on and ultimate revocation of parole supervision. (ECF No. 1 at 13-30). On March 14, 2014, Plaintiff was released following his completion of a ten year prison sentence. (*Id.* at 13). As part of his sentence, Plaintiff was required to serve a three year period of parole supervision pursuant to New Jersey's No Early Release Act. (*Id.*). Following his release, Plaintiff was taken to the district parole office in Passaic, New Jersey, where he met his parole officer, Steven Tischio. At that meeting, Plaintiff admitted that he was a former gang member.[1] (*Id.*). Because of his former gang status, Plaintiff was placed in the parole department's Gang Reduction Aggressive Supervision Program ("GRASP") and was subject to the gang related parole conditions associated with that program. (*Id.*). After being told by Tischio that he could either agree to GRASP or return to prison for refusing to accept the terms of his supervised release, Petitioner signed paperwork in which he agreed to follow the rules and restrictions of the GRASP program. (*Id.*).

A few days later, on March 19, 2014, Plaintiff again met with Tischio for a random drug screening and to discuss his supervised release. (*Id.* at 14). During that meeting, Plaintiff discussed with Tischio his personal and religious beliefs while denying that those beliefs constituted his membership in any gang or particular white supremacist organization. (*Id.*). Petitioner describes his belief set as "vehemently Eurocentric [including] much pride in [his] ancestry" and as being based on a "love for [his] own people" rather than "hate" for other racial groups. (*Id.*). Plaintiff also apparently explained to Tischio that he is a member of the "Asatru/Odinism" faith, and that as a member of that faith, he often wears symbols which he believes are related to his religious beliefs which are also often associated with skinhead or Neo-

---

[1] Plaintiff is apparently a former "skinhead." (ECF No. 1 at 14).

2

Nazi organizations including "Thor's Hammer" and a variation on the swastika. (*Id.* at 15). Plaintiff asserts that Tischio informed him that his religious expression would not violate his parole terms, but that he would be required to refrain from "the gang lifestyle" altogether going forward. (*Id.*). Plaintiff claims that Tischio wrote a report, however, which instead stated that Plaintiff admitted his continued involvement in gang activity.[2] (*Id.* at 15-16).

Shortly thereafter, Plaintiff acquired his own residence. (*Id.* at 16). On March 22, 2014,[3] Tischio, accompanied by another probation officer, was admitted into Plaintiff's apartment by Plaintiff's landlady. (*Id.*). While in Plaintiff's apartment, they apparently came across Plaintiff's religious altar and reported this find to their supervisor who apparently suggested that the altar "may be tied to [Plaintiff's] white supremacist beliefs." (*Id.*). Tischio returned again a few weeks later on April 3 with Plaintiff's permission and searched Plaintiff's home while Plaintiff was out. (*Id.* at 17). During his search of Plaintiff's home, Tischio discovered numerous books which he believed were tied to Plaintiff's gang-related activities including the following: "Mein Kampf; The Young Hitler I Knew; Hitler; Federal Siege on Ruby Ridge; Lincol[n]'s Negro Policy; Jewish [W]orld Supremacy; and Autobiography of a Recovery Skinhead." (*Id.*). Upon finding these books, Tischio required Plaintiff to report to his office the next day. (*Id.*).

---

[2] In his complaint, Plaintiff references several documents which he apparently intended to attach to his complaint including Tischio's reports, an affidavit from his brother, information regarding his religion, etc. (*See, e.g,* ECF No. 1 at 15-16). Plaintiff does not actually include those documents in his filings, however, so this Court is unable to ascertain what information is contained in those documents at this time.

[3] Plaintiff actually states that this event occurred "On March 22, 2015," and that the following instance occurred on "April 3, 2015." (ECF No. 1 at 16-17). However, Plaintiff also states that these occurred only shortly after his release on GRASP. (*Id.*). Plaintiff also later states that his parole revocation hearing took place in June 2014, and that he has been incarcerated since that date, which suggests that the 2015 dates he has provided are mistaken and that he intended to list the dates as March 22 and April 3, 2014. (ECF No. 1 at 20).

3

Plaintiff reported to Tischio's office the next day. (*Id.*). There, Plaintiff met with Tischio and his direct supervisor, Sergeant Longinetti. (*Id.*). During that meeting, Plaintiff was told that the books were considered gang materials, a point with which Plaintiff disagreed. (*Id.*). Plaintiff, however, agreed to discard the books to avoid any other issues with his parole. (*Id.*).

After Longinetti left, Tischio requested Plaintiff's cell phone, which Plaintiff gave him. (*Id.*). While looking through the phone, Tischio found text messages complaining about him, which apparently made Tischio angry, and a photograph of Plaintiff wearing a shirt which included a swastika in its design. (*Id.*). Based on the swastika, which Plaintiff asserted was related to his religion and not to Nazi symbology, Tischio, Longinetti, and another officer "accused" Plaintiff of promoting gang signs, which would violate his parole terms. (*Id.* at 18). During this period, Longinetti rejected Plaintiff's assertion that the symbol was related to his religion, apparently stating "[y]ou Nazi[s] are always trying to hide behind religion. You're no different from bloods wearing red sports teams gear but not knowing a single person on the team." (*Id.*). Plaintiff apparently backed down and agreed to do away with the shirt. (*Id.*). Regardless, Tischio handcuffed Plaintiff, incarcerated him at Logan Hall in Newark, and filed a violation of GRASP against Plaintiff. (*Id.*). According to Plaintiff, Longinetti reported the following in the violation charges: "[Plaintiff] claims these items are religious but it would appear he is attempting to mask his supremacist beliefs behind the term religion. Therefore, a residential program is being requested at this time." (*Id.*).

Longinetti's supervisor, Christopher Carlini, approved the request for a residential program, and Plaintiff was kept in Logan hall for some forty-seven days. (*Id.* at 18-19). During his time there, Plaintiff apparently "relapsed on alc[o]hol and drugs," but was told that he "could be given a drug program" instead of reimprisonment at his revocation hearing. (*Id.* at 19).

Plaintiff, in the hopes of being given a rehab program rather than more jail time, pled guilty to the violation of GRASP charge. (*Id.* at 19). Although he pled guilty to the violation of GRASP resulting from his alleged gang promotion, Plaintiff states that he explained that he did not actually promote gang symbols, but instead told the hearing officer that he pled guilty in hopes of getting a rehab program and had only worn the shirt for religious reasons. (*Id.*). The hearing officer, however, ultimately sentenced Plaintiff to a twelve month incarceration term on June 10, 2014. (*Id.* at 20). Plaintiff apparently wrote to the chairman of the New Jersey Parole Board and requested a new hearing, but did not receive any relief. (*Id.*).

On March 16, 2015, Plaintiff received another parole hearing before two different hearing officers. (*Id.*). Plaintiff continued to argue that he was not participating in gang related and racist activity, but instead had only sought to follow his religious beliefs. (*Id.*). The officers apparently rejected this argument, however, finding that Plaintiff continued to demonstrate "a racial hate mentality." (*Id.*). The officers therefore gave Plaintiff another twenty month prison sentence, thus requiring Plaintiff to "max out" his NERA supervised release term. (*Id.*).

## II.  DISCUSSION

### A.  Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seeks damages from a state employee, *see* 28 U.S.C. § 1915A. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff has been granted *in forma pauperis* status and is a convicted prisoner currently incarcerated following a parole revocation bringing suit against governmental employees.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[4], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff attempts to raise claims pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights arising out of his parole revocation. "To establish a claim under 42 U.S.C. §

---

[4] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Here, Plaintiff asserts the following claims: that the Parole Officer Defendants (Defendants Tischio, Longinetti, and Carlini) violated his First Amendment Freedom of Speech and Free Exercise of Religion rights by issuing a violation of parole terms based on books in his possession and allegedly religious clothing containing swastika-like symbols, that the Hearing Officer Defendants (Defendants George, Robertson, and Morenco) denied him Due Process and Equal Protection of the laws by ruling against him at his parole revocation hearings in so much as they based their rulings on his exercise of his speech and religious rights, and supervisory liability claims against Defendants Ward and Plousis.

**1. Plaintiff's Claims against the New Jersey State Parole Board and Defendants Ward and Plousis are not cognizable under § 1983**

Initially, this Court notes that several of the Defendants Plaintiff names are not subject to suit under § 1983 on the basis of the facts pled by Plaintiff. First, this Court notes that the New Jersey State Parole Board is not a proper defendant in a § 1983 matter. *See, e.g., Randolph v. New Jersey State Parole Office*, No. 07-376, 2007 WL 1521189, at *3 (D.N.J. May 21, 2007).

This is so because Parole Board, as a governmental entity, is considered an arm of the State and is therefore not a "person" for the purposes of suit under § 1983. *Id.*; *see also Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 68-70 (1989); *Madden v. New Jersey State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971). As such, the Parole Board is not subject to suit and Plaintiff's claims against it must be dismissed with prejudice at this time.

Plaintiff also attempts to plead supervisory liability claims against Defendants Plousis and Ward. In so doing, however, Plaintiff connects them to the facts he has alleged solely through their supervisory role over the other named Defendants who actually took the actions about which Plaintiff has complained. As such, Plaintiff, as to these two Defendants has pled no more than a *respondeat superior* theory of liability. As the Supreme Court has established, however, government officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" in a § 1983 action and a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*"). As such, Plaintiff's claims against Plousis and Ward must be dismissed from this action without prejudice at this time as Plaintiff has not pled sufficient facts to make out a non-*respondeat superior* theory of supervisory liability.

**2. Plaintiff's claims against the Hearing Officer Defendants may not be brought until such time as he has had their revocation decisions overturned, and Plaintiff's official capacity claims seeking monetary damages against the remaining Defendants must be dismissed**

In his complaint Plaintiff asserts that, in revoking his NERA supervised release term and in imprisoning him for the full duration of that term, the Hearing Officers denied Plaintiff Due Process and Equal Protection in so much as their decisions were arbitrary and based on impermissible factors including his religious beliefs.  While it is true that a hearing officer can violate Due Process by relying on an impermissible factor, such as religion, in denying or revoking parole, *see, e.g., Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980), any decision by this Court finding that the Hearing Officer Defendants violated Due Process or Equal Protection in revoking Plaintiff's supervised release term and in ordering him to continue in prison throughout the remainder of that term "would necessarily demonstrate the invalidity" of Plaintiff's current term of incarceration and Plaintiff's claims against the officers are thus barred by the *Heck* and *Wilkinson* doctrines.  *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal . . . proceedings) – *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration"); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994).  As Plaintiff's claims against the Hearing Officer Defendants arise entirely out of his assertion that they ordered him imprisoned in violation of the Constitution, those claims would necessarily imply the invalidity of the revocation and imprisonment orders if successful, and thus Plaintiff's claims against the Hearing

9

Officer Defendants must be dismissed until such time as their orders have been overturned through a habeas proceeding or state court action. *Williams*, 453 F.3d at 177.

The issue becomes somewhat more complicated when one considers the claims Plaintiff raises against the Parole Officer Defendants. In large part, Plaintiff's claims against the Parole Officer Defendants arise out of his allegation that the procedures used against him must be invalidated *going forward* because they improperly allowed his religion and personal book collection to be used against him as proof of a parole violation. Thus, Plaintiff asks this Court to declare those policies and procedures invalid going forward, and to issue prospective relief including enjoining parole officers from using a parolee's religion as proof of a violation and potentially a new parole eligibility hearing. As this prospective relief does not require the invalidation of the orders revoking Plaintiff's supervised release, nor reward him on the basis of his confinement, such claims do not run afoul of the *Heck* or *Preiser* doctrines, and such claims are therefore permissible even in the absence of the invalidation of Plaintiff's revocation and incarceration orders, and therefore may proceed based on the facts currently presented to the Court. *Wilkinson*, 544 U.S. at 82; *Edwards v. Balisok*, 520 U.S. 641, 643-48 (1997).

Plaintiff's money damages claims, even against the Parole Officer Defendants, however, are more problematic. In support of his claim for damages, Plaintiff specifically states that such damages should "compensat[e him] for money lost due to deprivation of gainful employment and various other items." (ECF No. 1 at 33). To the extent that Plaintiff seeks damages for employment he lost because he was incarcerated, any such damages award would require a finding that his incarceration was improper, and such a claim therefore could not proceed until such time as the incarceration term Plaintiff has undergone has been overturned. *Wilkinson*, 544 U.S. at 81-82; *Edwards*, 520 U.S. at 648. To the extent Plaintiff seeks damages for lost property

10

(such as any books or shirts he was forced to discard because of alleged constitutional violations by parole officers), it is possible that such a claim for damages may not be barred by *Wilkinson* and *Heck*, though a determination on that point would require facts not currently before the Court. As such, Plaintiff may not seek monetary damages to the extent that the claim for those damages arises out of his incarceration.

Finally, to the extent that Plaintiff seeks money damages not related to his incarceration, any such claim for damages against the Parole Officer Defendants in their official capacities would have to be dismissed. This is so because a suit against a state official in his official capacity is nothing more than another means of pleading a claim against the state entity which employs him, and such entities are not persons subject to suit under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *see also Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013); *see also Will*, 491 U.S. at 71. Thus, to the extent that Plaintiff's seeks money damages against the Parole Officer Defendants in their official capacities, those claims must be dismissed with prejudice.

**3. Plaintiff's Request for the Appointment of Pro Bono Counsel**

Plaintiff has also requested that this Court appoint him pro bono counsel. (*See* Document 3 attached to ECF No. 1). In so doing, Plaintiff argues that his case presents complex issues, that he is untrained in the law, has failed to litigate his claims in prior cases, cannot afford a lawyer, and believes that he cannot find a lawyer to take his case due to a "climate of political correctness." (*Id.*). District courts have wide discretion with which to decide when a request for appointed counsel is warranted. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *see also Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). In exercising that discretion, a court must

first determine whether the presented claims have merit; where a plaintiff presents meritorious claims and has shown his indigence the court must weigh the relevant factors to determine whether counsel should be appointed. *Tabron*, 6 F.3d at 155-57; *Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011). Those factors include the litigant's ability to present his case, the complexity of the legal issues involved, the degree to which factual investigation will be necessary and the plaintiff's ability to conduct such an investigation, the litigant's ability to retain counsel on his own behalf, the extent to which the case turns on credibility, and whether expert testimony will be required to resolve the case. *Tabron*, 6 F.3d at 155-57; *Cuevas*, 422 F. App'x at 144-45. These factors are not exhaustive of all those a court may consider, and courts are free to consider any other relevant factors in making its determination. *Montgomery*, 294 F.3d at 499.

In this matter, this Court finds that the appointment of counsel is not warranted at this time. Looking to the relevant factors, the remaining issues in this case are not overly complex (in so much as Plaintiff is asserting his religious and personal beliefs were improperly used against him by his probation officers), Plaintiff clearly understands the nature of the claims he wishes to present, and it appears that he will be able to ably represent himself going forward.[5] That it is not likely that expert testimony will be necessary here, and that Defendants will likely provide all of the relevant discovery further support this Court's conclusion that counsel need not

---

[5] That Plaintiff's previous suit was dismissed after Plaintiff failed to file opposition briefs to dispositive motions does not lead this Court to believe otherwise. *See generally Locascio v. Balicki*, No. 07-4834, 2011 WL 2490832 (D.N.J. June 22, 2011) (dismissing Plaintiff's previous case on an unopposed motion for judgment on the pleadings because Plaintiff had failed to exhaust his claims). To the extent that Plaintiff's failure to oppose the motion in that case affected the outcome thereof, it was Plaintiff's failure to litigate the motion at all, not the lack of *ability* to represent himself which hindered Plaintiff.

be appointed at this time. This Court will therefore deny Plaintiff's request for the appointment of counsel without prejudice.

### III.  CONCLUSION

For the reasons stated above, this Court will dismiss Plaintiff's claims against the New Jersey State Parole Board with prejudice, dismiss Plaintiff's money damages claims against the Parole Officer Defendants in their official capacities only with prejudice, dismiss Plaintiff's claims against the Supervisor and Hearing Officer Defendants without prejudice, permit Plaintiff's remaining claims against the Parole Officer Defendants to proceed at this time, and will deny Plaintiff's request for the appointment of pro bono counsel without prejudice. An appropriate order follows.

Dated: April 7, 2016                                                             *s/ Susan D. Wigenton*
                                                                                                Hon. Susan D. Wigenton,
                                                                                                United States District Judge